# EXHIBIT B

10/21/2021 3:13 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 58422642
By: Adiliani Solis
Filed: 10/21/2021 3:13 PM

CASE NO. 2021-64773

| | | |
|---|---|---|
| JAMES JOHNSTON | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | HARRIS COUNTY, TEXAS |
| | § | |
| OCCIDENTAL PETROLEUM | § | |
| CORPORATION AND OXY | § | |
| PETROLEUM QATAR LTD, | § | |
| A WHOLLY OWNED | § | |
| SUBSIDIARY OF OCCIDENTAL | § | |
| PETROLEUM CORPORATION, | § | 165th JUDICIAL DISTRICT |
| | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S FIRST AMENDED PETITION AND JURY DEMAND

Plaintiff Jim Johnston ("Plaintiff" or "Johnston") files his First Amended Petition and Jury Demand against Defendants and states:

### SUMMARY

1. This case involves Defendants' egregious and outrageous conduct and inaction when its employee, Plaintiff Johnston, sustained serious personal injuries from a 3-meter fall within the course of his employment with Defendants. Indeed, both Occidental Petroleum Corporation ("OPC") and Qatar Petroleum Qatar Ltd. ("OPQL"), a wholly owned subsidiary of OPC (collectively, "Defendants"), (a) failed to comply with their duty to provide Johnston with a safe workplace, (b) created workplace conditions causing Johnston to sustain serious injuries from the

1

Certified Document Number: 98556808 - Page 1 of 16

fall; (c) failed to provide Johnston with a legal framework to pursue remedies for his workplace injuries; (d) ignored his complaints about his workplace injuries; and (e) committed fraud to deceive Johnston from pursuing his potential work-related negligence/gross negligence, fraud, equitable estoppel, and detrimental reliance claims against Defendants. Accordingly, no statute of limitations bars his claims in this lawsuit based on Defendants' actions and omissions related to Johnston's claims.

2. In the international law context involving Johnston's personal injuries, fraud, and other claims underlying his case, Defendants insist that they were "immune" from any workplace-related lawsuit in Qatar and proceeded to ignore Johnston's injuries and complaints in favor of their status as oil and gas companies working in a foreign jurisdiction. This they cannot do. Under Texas law, Johnston may pursue his claims and remedies now that he is unshackled from the fraud and other false representations that prevented him from initially filing a lawsuit in Texas state court.

3. Accordingly, Johnston lodges his personal injury (negligence and gross negligence), employment related fraud/estoppel, and detrimental reliance claims under Texas law against OPC and Oxy Petroleum, Ltd. ("OPQL").

Certified Document Number: 98556808 - Page 2 of 16

## JURISDICTION

4. This Court has jurisdiction over this case because Defendant OPC is located in Houston, Texas. In turn, Defendant OPQL is a wholly owned subsidiary of OPC and both Defendants were joint or single employers. Defendants' actions and omissions stemmed from Defendants' management decisions made in Harris County, Texas, and Qatar. Defendant OPC is a Texas corporation with its principal place of business in the United States, and OPQL is a subsidiary or, in the alternative, a joint or single enterprise with OPC. To be sure, OPQL employees, including Johnston, dealt largely with OPC management in Houston, Texas, thus conferring jurisdiction to this court and jury to rule on his tort and equitable claims against Defendants.

5. Plaintiff Johnston also pleads damages over $300,000 or the amount to confer jurisdiction over this case. Thus, Johnston has satisfied all conditions precedent to bring this action against Defendants.

## VENUE

6. Venue is proper in Harris County District Court because the negligence causes of action and all other claims alleged are connected to Harris County, Texas, and Defendants conduct business in Harris County, Texas. Tex. Civ. Prac. and Rem. Code § § 15.002(a)(1)-(3) and § 15.038.

3

Certified Document Number: 98556808 - Page 3 of 16

## DISCOVERY CONTROL PLAN

7. Johnston intends to conduct discovery under Tex. Rule Civ. P. 190.4 (Level 3). This case involves complex issues related to international employment law and, therefore, the Level 3 designation for discovery is warranted.

## THE PARTIES AND SERVICE OF PROCESS

8. Johnston worked as a Production Representative for OPC and OPQL. His job duties were, without limitation, (i) overseeing the produced water separation plant; (ii) seeking the best outcome for OPC regarding any disputes regarding oil production figures; (iii) facilitating and supervising the maintenance and project personnel; (iv) conducting site checks and engineering surveys; (v) interfacing with joint venture partners, such as Qatar Petroleum; and (vi) communicating with OPC management through detailed daily reports. Defendants, singularly or together, fired Johnston on December 14, 2014.

9. Defendant OPC is an oil and gas company that conducts business at 5 Greenway Plaza, Suite 110, Houston, TX 77046. Defendant OPQL is a subsidiary of OPC and, in the alternative, is a joint or single employer with OPC. Therefore, Defendants may be served with process through their registered agent for service of process at CT Corporation System, 1919 Bryan

Certified Document Number: 98556808 - Page 4 of 16

Street, Suite 900, Dallas, Texas 75201. Plaintiff has served both Defendants because they are a joint venture companies, joint employers, or a single employer under Texas law.

## NO FEDERAL CLAIMS ALLEGED

Johnston does not allege any federal claims in this lawsuit.

## STATEMENT OF FACTS

### The underlying facts in this case are sad, unfortunate, and outrageous:

10. This fact statement describes a series of events following Plaintiff Johnston's on-the-job injury ("OJI") and Defendants' egregious failure to provide Johnston a safe work environment during his employment with Defendants. To be sure, both OPC and OPQL informed Johnston that he had no recourse under Qatar law because the labor laws in Qatar did not apply to oil companies, such as OPC and OPQL. Thus, Defendants placed their own interests above Johnston's health, safety, and welfare.

11. On December 18, 2011, Mr. Johnston sustained a 3-meter fall from an unsafe platform. The access platform that had been requested for this area was not installed until after Mr. Johnston's fall.

12. Oxy finally installed the access platform within weeks of Johnston's OJI. No safety shut down was available at the time because OPC had the safety system

Certified Document Number: 98556808 - Page 5 of 16

on override for ten years and, as a result, this placed oil production *before* personnel safety.

13. Shortly after his fall, Johnston was medevacked to Hamad Hospital Doha by helicopter and taken by ambulance to the Emergence Department and underwent treatment there on December 18, 2011.

14. OPC extracted Johnston from the same Emergence Department under the authority of the OPQL Health and Safety Manager before midnight on December 18, 2011, even though he should have been under observation for twenty-four (24) hours.

15. Johnston was taken to the Radisson Blu Hotel and handed over to the night porter in a wheelchair by OPC's Health, Environment and Safety Manager.

16. When he fell, Johnston sustained multiple injuries, including a broken nose, busted teeth, and a four-inch cut at the back of his head requiring ten (10) stitches. Johnston had also been unconscious for twenty (20) minutes. He also suffered severe shoulder and back pain with a possible broken arm and multiple cuts and bruises.

17. Johnston's fall occurred from a height of three (3) meters and stemmed from Defendants' lack of attention to safety. Three (3) days after his fall on December 18, 2011, he was flown back to Australia, and spent (5) five months

6

in intense physical therapy for his muscular skeletal and physical injuries; he was also treated for Post-Traumatic Stress Disorder (PTSD). His PTSD continues to this day.

18. Johnston returned to work in June of 2012 on a schedule of twenty-eight (28) days on and twenty-eight (28) days back in Australia for on-going health treatments. After completing nine (9) months at work and nine (9) months at home, Johnston concluded that he was unable to perform his regular duties because of his medical conditions resulting from his fall.

19. His doctors, namely, Dr. Nora Mat Zin, Dr. M.S.S., Susan Vogel (phycologist), Chris Lloyd (primary care) and Dr. Sabash Narayanan, among other doctors, advised Johnston that he should return home to Australia for additional treatment because his attempt to return to work was not feasible and because Johnston was unfit to return to work.

20. Hence, Johnston returned to Australia in April of 2014. OPC refused to acknowledge his doctors' health reports and medical certificates. Nevertheless, Johnston returned to Doha, Qatar to obtain an independent medical examination by Qatar's most senior orthopedic surgeon in June of 2014.

21. The surgeon's medical report agreed with Johnston's own Dr. Lloyd in Australia; OPQL, however, still refused to recognize the results. Shortly thereafter, OPC stopped paying Johnston's salary and dropped his international

7

Certified Document Number: 98556808 - Page 7 of 16

medical coverage. OPC and QPQL also terminated their contract with Johnston on December 14, 2014, while Johnston was on medical leave. OPC did not give Johnston a reason for terminating the contract.

22. OPC and OPQL also informed Johnston that oil companies are not subject to labor laws in Qatar. When Johnston asked what law governed the Defendants, he received no response. Johnston also asked for a copy of OPC's and OPQL's "Employee Grievance Policy." Again, Johnston received no answer from Oxy or OPQL.

23. Thereafter, Johnston secured legal representation in Qatar; Johnston's counsel informed him that Qatar's labor laws do not apply to oil companies; instead, they are protected by Qatar's government. Thereafter, in February of 2020, all international travel ceased because of the Covid-19 pandemic.

24. A Qatar court then ordered Johnston to attend a court appearance in Qatar on December 30, 2020. In lieu of attending the hearing, Johnston was asked to send a health report from his doctor and his passport copies of his Visa entry and exit to identify his visits to Doha. Despite the lack of international travel, the Qatar court stated that it would make a ruling and informed Johnston that it was important that he be there. This did not make sense because Johnston could not travel internationally at the time. Despite requesting a postponement of

8

Certified Document Number: 98556808 - Page 8 of 16

the hearing and opinion, the Qatar court refused to postpone its ruling on December 31, 2020.

25. Time passed and Johnston was not informed of any court rulings until February 23, 2021. The Qatar Court ruled against Johnston because he did not attend the required court appearance on December 30, 2020. Given that international travel was prohibited on a worldwide basis and, therefore, Johnston could NOT travel to Qatar or anywhere outside of Australia at that time, it was obviously impossible for Johnston to attend the hearing.

26. In short, OPQL ignored Johnston's unsafe work environment despite his previous OJI pleas to install a safe access platform. In turn, Defendants ignored his medical conditions stemming from his December 18, 2011, fall.

27. OPC offered Johnston a separate financial payout, contingent on him relinquishing his rights to any further legal action regarding his injuries and health. Johnston refused to sign the document. OPC did not give him any legal recourse. OPC's HR Department informed Johnston that OPC did not answer to Qatar Law. Indeed, OPC held Johnston in a legal system that protected the oil companies and, accordingly, Johnston did not have an opportunity to a fair hearing because the oil companies received special protection under Qatar law. Moreover, Qatar law does not recognize "mental health issues," such as PTSD.

28. To date, Johnston has been unable to work because of his injuries sustained on December 18, 2011. Indeed, he still suffers back, neck and shoulder pain on a constant and consistent basis. He has restricted neck movement and lateral strength loss. Further, he continues to suffer from depression, anxiety, and PTSD.

29. In conclusion, Johnston has lost his health, his home, and his family's financial future. To be sure, OPC and OPQL should be held accountable for their actions and inactions predicated on what has happened to Johnston from December 2011 through 2021. This is not justice or fairness; rather, it is a callous example of oil companies sacrificing a worker's safety at the altar of corporate oil profits and a refusing to assist its own severely injured employee.

30. In response to Johnston's principal demand letter to OPC in August of 2021, Defendants rely upon two contentions (1) Johnston pursued his so-called "remedies" solely under Qatar law; and (2) this pursuit precludes him from seeking remedies under Texas workers' compensation and tort law.

31. In an August 2021 email, OPC flatly denied any responsibility for Johnston's on-the-job injuries and invoked a *jurisdictional argument* that Johnston had hired a Qatar attorney to pursue his work-related injuries against OPQL. These contentions are wrong, misplaced, unpersuasive, and frankly, egregious, and unconscionable.

Certified Document Number: 98556808 - Page 10 of 16

32. OPC and OPQL worked to deceive and trap Johnston in his pursuit of his rights by ignoring his health and well-being – both OPQL and OPC failed to address a plethora of doctors' reports and other well-documented information related to his work-related injuries. These facts remain undisputed.

33. To be sure, Johnston was stunned when OPQL's HR Manager informed Johnston that he did not have *any rights* under Qatar law to pursue *any remedies* he incurred while employed with OPQL.

34. Accordingly, Johnston's futile attempt to immediately retain a Qatar Law Firm was unsuccessful because no Qatar law firm would take his case. At that time, Johnston was unaware of the Qatar law "immunity principal" favoring oil companies, namely, Qatar provides oil companies, such as OPQL and Oxy, *immunity* from personal injury and workers' compensation claims and lawsuits against oil companies, while leaving their employees with no legal protection whatsoever.

35. On August 15, 2015, Mr. Johnston managed to secure legal representation in Doha from Lebanon-based "Deebco Law." Deebco accepted his case and quickly determined that it could not pursue OPQL based on the protection afforded to oil companies in Qatar. Deebco had also appointed a Power of Attorney ("POA") for Mr. Johnston to represent him in his absence from Qatar stemming from his work-related personal injuries. After filing a

11

Certified Document Number: 98556808 - Page 11 of 16

claim with the Qatar lower court, Deebco did not prevail based on OPQL's immunity to work-related personal injury claims. Deebco then appealed the court's rejection of Johnston's case in the first instance. Thereafter, on December 31, 2020, the Qatar court ruled against Johnston for nonappearance. Mr. Johnston, however, would have appeared in person if Qatar had not *suspended all travel* because of the COVID-19 global pandemic.

36. Consequently, Johnston's case has never been heard under a legal system or regime that upholds human rights related to his work-related injuries sustained while employed with OPQL. Simply put, Johnston has never had his day in court. Plainly, from the time that Johnston sustained his work-related injuries, OPQL and OPC sought to deceive Johnston in his pursuit of his legal rights. OPQL and OPC also committed fraud against Mr. Johnston by not giving him truthful information about his remedies for his work-related injuries.

37. Johnston would have sought US legal representation much sooner had OPQL and OPC not committed fraud and provided Johnston with accurate information about his work-related injuries sustained in Qatar.

38. Regarding Johnston's damages, he requests a total of $2,169,925.00, which consists of lost salary ($132,529 per year) + (11 years=$1,603,601.00 annual OPI bonus calculated at average 10% = $176,396.00 + Cost of flight for court attendance = $10,000.00 +Legal Cost in Qatar = $14,000.00 +

Certified Document Number: 98556808 - Page 12 of 16

$158,000 paid out home sale equity = $158,999 + Car sold for $54,000.00 + Rent 2017 to the present $19,500.00 x 4 yrs = $78,000.00 + $70,928 to pay back Australian disability support = Net of $2,169,925.00; include Johnston's fees incurred per his U.S. Legal Team, $716,075 and the total claim is $2,886,00.00. These figures are preliminary and based on salary calculated in USD at exchange 3.65 at time of Johnston's employment termination. Johnston has projected forward to 2025 at age 67, which is the normal retirement age.

## CAUSES OF ACTION

Based on the facts recited in this Petition, Johnston lodges the following causes of action:

### NEGLIGENCE AND GROSS NEGLIGENCE

39. Under Texas law, employers have a duty to provide its employees with a safe workplace. Defendants violated this duty when they failed to install a platform for employees to work on a high elevation area to remedy workplace problems with Defendants' oil and gas equipment. Given Defendants' negligence in failing to install the platform, Johnston sustained a 3-meter fall that caused him serious injuries that persist to date, including his PTSD and other physical and emotional damages. Shortly after Johnston's fall, Defendants installed the platform. Too little, too late.

Certified Document Number: 98556808 - Page 13 of 16

40. Therefore, Johnston is entitled to lost wages, compensatory damages, and punitive damages predicated on his work-related injuries.

## FRAUD

41. During Johnston's employment and after he sustained his injuries, Defendants repeatedly told Johnston that Defendants did not have workers' compensation insurance, and that he had no remedies for his work-related injuries under Qatar law. OPC had workers' compensation insurance; therefore, it intentionally provided false information to Johnston to protect its own interests.

42. Nevertheless, Johnston, through the Deebco law firm, filed a claim in Qatar that was summarily rejected by a Qatar court because Qatar provides immunity from a lawsuit filed against ANY oil and gas company, such as OPC, under Qatar law. Additionally, Defendants repeatedly made false representations to Johnston that he had sufficient remedies under Qatar law. These representations were false when made with malicious intent; indeed, Defendants wanted Johnston to rely upon these false statements to Johnston's detriment.

43. Therefore, Defendants' fraud not only tolls the statute of limitations, but the false statements also support an independent fraud claim against Defendants.

## DETRIMENTAL RELIANCE AND ESTOPPEL

44. For the same reasons recited in Petition paragraphs 33-36 and Plaintiff's Fact Statement, Defendants have no statute of limitations defenses – Plaintiff timely filed this lawsuit once he discovered Defendants' negligence, fraud, detrimental reliance, and estoppel claims. Defendants' fraud and attempt to cover up their wrongdoing only buttress Johnston's claims.

45. Based on Johnston's causes of action, he requests the following damages:

    (i)    Lost pay and employee benefits, both in the past and five years into the future ("Back Pay and Front Pay");

    (ii)    Compensatory damages, including, without limitation, all medical expenses and other costs stemming from Johnston's medical treatment and expenses;

    (iii)    Punitive damages;

    (iv)    Attorneys' fees, costs, and pre-and post-judgement interest; and

    (v)    All other relief to which Plaintiff is justly entitled;

    (vi)    Plaintiff demands a jury trial on all issues to be tried by a jury.

Certified Document Number: 98556808 - Page 15 of 16

Certified Document Number: 98556808 - Page 16 of 16

By: /s/ Dean J. Schaner

Dean J. Schaner
Texas Bar No. 17726500
**SCHANER LAW FIRM PLLC**
5313 Pocahontas St.
Bellaire, Texas 77401
Telephone: 832-548-1478
deanschaner@schanerlawfirm.com

16



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   December 2, 2021


Certified Document Number:        98556808 Total Pages:  16

*Marilyn Burgess*

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**